UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WESTERN WATERSHEDS PROJECT,
et al.,

            Plaintiffs,

      v.

KATHLEEN CLARKE, Director of the
Bureau of Land Management, et al.,

            Defendants.

Civil Action 03-01985 (HHK)

MEMORANDUM OPINION AND ORDER

Pliantiffs Western Watersheds Project ("WWP") and American Lands Alliance ("ALA") bring this action against defendants, the Bureau of Land Management ("BLM"), Kathleen Clarke, Director of the BLM, and Francis Cherry, Deputy Director of the BLM.  Plaintiffs allege that defendants entered an agreement with defendant-intervenor Harvey Frank Robbins ("Robbins") allowing Robbins's livestock to graze on public lands in violation of the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1701 *et seq.*, the Taylor Grazing Act ("Taylor Act"), 43 U.S.C. § 315 *et seq.*, and various BLM regulations.  Before the court is Robbins's motion to transfer, under 28 U.S.C. § 1404, to the District of Wyoming.  Upon consideration of the motion, plaintiffs' opposition thereto, and the record of this case, the court must deny the motion.[1]

I. BACKGROUND

Frank Robbins purchased three ranches in Wyoming between 1994 and 2000, totaling almost 55,000 acres of land.  He held permits through the Forest Service and BLM allowing him

---

[1] Defendants BLM, Clarke and Cherry take no position on this motion to transfer.

to graze his cattle on federal lands, much of which is intermingled with his own. Relations between Robbins and the BLM office in Worland, Wyoming over the last 10 years have been less than cordial. The local BLM accused Robbins of repeatedly violating his permits by grazing his cattle in areas, in numbers and at times not authorized and, accordingly, brought claims for trespass and permit violation. Robbins, in turn, insists that the local BLM made false accusations and brought frivolous complaints. This history of conflict produced over 20 federal court cases or administrative appeals between Robbins and the BLM.

In order to end this expensive and time-consuming litigation, Robbins "felt compelled to contact officials higher up in the BLM chain of command in an attempt to resolve" the outstanding claims. Def.-Intervenor's Mot. to Transfer at 3. Robbins's counsel negotiated a settlement with John Kunz (BLM's Assistant Regional Solicitor for the Rocky Mountain Region) in Colorado and Robert Comer (Associate Solicitor for the Interior Department) in Washington, D.C. In January 2003, the parties executed an agreement which closed or stayed most of the pending cases and granted Robbins access to certain public lands and permission to graze his cattle subject to certain conditions. *See generally* Ex. 1 to Def.-Intervenor's Mot. to Transfer (Settlement Agreement, dated Nov. 27, 2002, executed Jan. 15, 2003).

Plaintiffs, two conservation organizations,[2] contend that the settlement agreement has injured them by degrading public lands and causing ecological damage. Specifically, they argue that BLM granted Robbins "immunities and privileges to which he is not entitled," allowing him to "graze public lands in violation of regulatory and permit requirements." Compl. ¶ 2. Further,

---

[2] WWP is a non-profit conservation organization with 1,200 members, and offices in Idaho, Wyoming and Utah, dedicated to protecting public lands and natural resources of watersheds in the American West. ALA is also a non-profit conservation organization, based in Washington, D.C., dedicated to protecting "desert, forest and aquatic ecosystems." Compl. ¶ 8.

plaintiffs claim that the BLM and Interior Department officials, based in Washington, D.C., overrode the judgments of BLM's Worland office. In 2001, the Worland office ordered closures of public allotments used by Robbins because of drought. In 2002, BLM's Worland-based biologists found that allotments Robbins' stock grazed, in violation of the closure orders, were overused, ecologically damaged and much less able to offer forage to the wildlife in the region.

In September 2003, plaintiffs brought an action, claiming that: (1) The agreement constituted final agency actions that were arbitrary, capricious, and an abuse of discretion under the APA by violating FLPMA and its implementing regulations by granted Robbins concessions; (2) the agreement, by permitting Robbins's livestock to graze, led to the undue degradation of public lands, and that BLM's failure to stop this degradation was agency action unlawfully withheld or unreasonably delayed under the; (3) the agreement prevented the local BLM office from issuing trespass notices to Robbins and therefore constituted unlawfully withhold or unreasonably delay agency action under the APA. Plaintiffs did not name Robbins as a defendant. In November 2003, the court granted Robbins's motion to intervene. In January 2004, Robbins filed the motion to transfer now before the court.

## II. ANALYSIS

Robbins seeks a discretionary transfer under 28 U.S.C. § 1404(a).[3] Plaintiffs oppose transfer on two grounds. First, plaintiffs claim that case law bars intervenors, such as Robbins, from even requesting a discretionary transfer. Second, in the alternative, plaintiffs argue that the balance of interests involved in considering a § 1404(a) motion weigh against transfer. The

---

[3] Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

court finds that no categorical rule bars Robbins from at least bringing a motion for discretionary transfer, but that the balance of interests ultimately weighs against transfer.

**A. Intervenors and Discretionary Transfers**

Plaintiffs maintain that a "well-settled principle" bars Robbins from bringing his transfer motion because intervenors must accept the venue chosen by plaintiffs. Robbins contends that no such rule precludes the court from at least considering an intervenor's motion for discretionary transfer. The court agrees with Robbins.

Section 1404(a) gives district courts the discretion to decide motions for transfer on "an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc.* v. *Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The Supreme Court in *Stewart* did not directly address the issue of whether intervenors may request discretionary transfer motions, but the decision suggests there are no absolute bars on bringing motions under § 1404(a). *See* 487 U.S. at 31 (finding a forum selection clause did not bar a district court from considering a discretionary motion for transfer).

Neither party cites controlling authority clearly prohibiting or allowing the court to consider § 1404(a) motions by intervenors. However, persuasive authority rejects a categorical rule barring discretionary transfer motions by intervenors, largely because no coherent rationale distinguishes an "original" defendant from a third-party defendant-intervenor for analysis under § 1404(a). *See Krupp Int'l, Inc. v. Platt Saco Lowell Corp.*, 615 F. Supp. 1103, 1104-07 (D. Del. 1985) (allowing a third-party defendant to bring a § 1404(a) motion because "[t]he policy considerations for granting a motion to transfer by a party to the original action seem equally applicable to a third-party defendant"); *Daily Express*, *Inc. v. N. Neck Transfer Corp.*, 483 F.

4

Supp. 916, 917-18 (M.D. Pa. 1979) (finding that a § 1404(a) motion brought by a third-party defendant did not prejudice the plaintiff and allowing the intervenor to move for discretionary transfer); *cf. Harvison v. Sunbelt Savings*, 1991 WL 153108 (D.D.C. July 23, 1991) (granting an intervenor's motion to transfer under § 1404(a) and forum non conveniens).

Plaintiffs cite a number of cases to support their assertion that an intervenor may not seek discretionary transfer. These cases fall into several categories. First, some cases state an entirely different rule--that an intervenor may not move for a *mandatory* transfer for improper venue.[4] Second, other cases are inapposite because they do not deal with intervenors requesting *discretionary* transfers.[5] Third and finally, two cases directly involve intervenors bringing discretionary transfer motions. *See* Pls.' Opp'n at 6-7 (citing *Beam Laser Sys., Inc. v. Cox Communications*, 117 F. Supp. 2d. 515, 517-18 (E.D. Va. 2000) (considering intervenor's motion for transfer under § 1404(a)); *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976) (same)). Both *Beam Laser* and *Commonwealth Edison* depend upon authorities

---

[4] *See Consumers Union of United States, Inc. v. Consumer Prod. Safety Comm'n,* 590 F.2d 1209, 1222 n.65 (D.C. Cir. 1978) (citing authorities on improper venue); *Trans World Airlines, Inc. v. Civil Aeronautics Bd.*, 339 F.2d 56, 63-64 (2d Cir. 1964) (finding that intervenor "waived the defense of improper venue"); *Pharm. Research & Mfrs. of Am. v. Thompson*, 259 F. Supp. 2d 39 (D.D.C. 2003) (observing that the third-party defendant "voluntarily intervened" and therefore "cannot be heard to object that . . . venue is improper").

[5] *See* Pls.' Opp'n at 7 (citing *Ashbury Glen/Summit Ltd v. Southeast Mortgage Co.*, 776 F. Supp. 1093, 1096 (W.D.N.C. 1991) (granting intervenor's motion for transfer under a Federal Deposit Insurance Corporation-specific statute); *Specmade Prods. v. Barnett*, 247 F. Supp. 75 (D. Ga. 1964) (denying intervenor's objections to jurisdiction, not venue); 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D, § 1918 at 485 (2d ed. 1986) (citing *Trans World Airlines* and *Specmade Products* for the blanket proposition that "[t]he intervenor cannot question venue," without distinguishing discretionary and mandatory transfer)).

that deal with improper venue instead of discretionary transfer.[6]  Only *Beam Laser* acknowledged a distinction between motions to transfer for improper venue and motions for discretionary transfer.  117 F. Supp. 2d at 518 n.1.  But that court found no functional difference between the two motions and provided no reasoning for this conclusion.  *Id*. (citing *Commonwealth Edison*, 71 F.R.D. at 394).  The court finds that the distinction is important.  It would prejudice plaintiff to allow a defendant-intervenor to transfer for improper venue under 28 U.S.C. § 1406, for such a transfer would occur after a plaintiff had the right to expect no further objections to venue.[7]  Also, because a § 1406 transfer is mandatory, if intervenors may bring such motions, defendants may abuse the rule by seeking out intervenors to dismiss the cases against them.[8]  Neither concern applies to *discretionary* transfer motions.[9]  Consequently, the

---

[6] *See Beam Laser*, 117 F. Supp. 2d at 517-18 (citing *Trans World Airlines*, 339 F.2d at 63-64, Ashbury Glen, 776 F. Supp at 1096; 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D, § 1918 at 485); *Commonwealth Edison*, 71 F.R.D. at 394 (citing *Trans World Airlines*, 339 F.2d at 63-64; 7A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1911 (1972) ("The intevenor cannot question venue.")).

[7] *See Daily Express*, 483 F. Supp. at 917-18 ("Rule 12(b) requires that a Defendant raise . . . the issue of improper venue . . . prior to the filing of a responsive pleading, or in the responsive pleading. . . . [I]f a Defendant fails to object to venue in either of these two ways, he has waived the objection to venue. . . . [T]o allow a Third-Party Defendant to make the objection . . . would also prejudice the right of the Plaintiff to have a timely objection to the propriety of venue, or none at all.").

[8] *See id*. at 918 ("[T]o allow a Third-Party Defendant to make the objection might lead to collusive efforts on the part of a Defendant to get a Third-Party Defendant into the action primarily for the purpose of moving for dismissal or change of venue.")

[9] *See id.* ("A Motion to Transfer under § 1404 differs from a Motion under § 1406 in that there is no claim that venue is improper as to the original Plaintiff and Defendant.  Neither is a request to transfer [under § 1404] waived by the Defendant if not raised prior to or in a responsive pleading.  As the Defendant has waived no right and could still make a Motion to Transfer for the convenience of the parties and witnesses, Plaintiff suffers no prejudice if a Third-Party Defendant requests transfer of the case.") (internal citations omitted).

court concludes that Robbins is not barred from bringing a discretionary transfer motion.

**B. Discretionary Transfer**

The court now turns to the standards involved in considering a discretionary transfer motion under § 1404(a). As with other motions, the moving party bears the burden of proving that a discretionary transfer is warranted. *Gemological Inst. of Am.*, *Inc. v. Thi-Dai Phan*, 145 F. Supp. 2d 68, 71 (D.D.C. 2001). As a threshold matter, the court must determine if the action could have been brought in the district proposed by the moving party--that is, whether venue and personal jurisdiction would be proper in the other forum. *Lamont v. Haig*, 590 F.2d 1124, 1131 n.45 (D.C. Cir. 1978); *Relf v. Gasch*, 511 F.2d 804, 806-07 (D.C. Cir. 1975). If these threshold criteria are met, the court must then balance various case-specific factors, including the private interests of the parties and public interests such as efficiency and fairness. *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d. 10, 12 (D.D.C. 2000). Because no one disputes that venue[10] and personal jurisdiction would be proper in Wyoming, the court now turns the relevant private and public interest factors.

**1. Private Interest Factors**

In considering a discretionary transfer motion, the court must balance six private interest factors, including (1) the plaintiff's choice of forum, (2) the defendant-intervenor's choice of forum, (3) where the claim arose, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof. *Wilderness Soc'y*, 104 F. Supp. 2d. at 12. The court finds that, on the whole, these factors militate against transfer.

---

[10] In a civil action against an agency, venue is proper in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e). Much of the subject matter of this case involves federal and private grazing property located in Wyoming.

*i. Plaintiff's Choice of Forum*

Generally, a plaintiff's choice of forum is given deference in determining whether a transfer is proper. *Thayer/Patricof Educ. Funding v. Pryor Res.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002); *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001); *Wilderness Soc'y*, 104 F. Supp. 2d at 12; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (finding "a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards . . . the alternative forum"). The court must determine if "the nexus between the operative facts and parties to the District of Columbia is sufficient to warrant the court giving deference to the plaintiffs' choice of forum." *Greater Yellowstone*, 180 F. Supp. 2d at 128. Less deference is warranted if the plaintiffs' chosen forum has "no factual nexus to the case" and if defendant seeks transfer to a forum in "which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state." *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996) (internal citations omitted).

Applying these principles, this court concludes that deference to plaintiffs' choice of forum is warranted, for several reasons. First, plaintiff ALA is a national organization with its primary office located in Washington, D.C, an important factor against dismissal. *See Wilderness Soc'y*, 104 F. Supp. 2d at 14 (finding the plaintiff's choice of forum not attenuated, and deserving deference, because the plaintiff had offices in the District of Columbia). More importantly, the heart of plaintiffs' complaint is the allegation that BLM's senior officials in Washington, D.C. overrode decisions made by local BLM staff in Wyoming regarding Robbins's livestock and grazing. Plaintiffs support these allegations by showing that BLM officials in

Washington, D.C. played a significant role in negotiating the agreement with Robbins. *See, e.g.,* Pls.' Exs. 12-16 (correspondences from Robbins' counsel to Fran Cherry at BLM's Washington, D.C. headquarters). Further, only BLM Deputy Director Cherry, located in Washington, D.C., signed the agreement. *See* Def.-Intervenor's Ex. 1 (Settlement Agreement at 16, Nov. 27, 2002). Finally, at least one letter indicates that the State Director of the BLM "worked closely with [the] Washington Office and Regional Solicitor's Office" in negotiating the agreement. Pls.' Ex. 11 (Bennett Ltr. to Robbins, Mar. 3, 2003).

Arguing for transfer, Robbins asserts that this dispute occurred in Wyoming, not Washington, D.C., and that "the history of correspondence . . . viewed in its entirety" shows that substantive negotiations took place in Wyoming and Colorado, with oversight from the District of Columbia. Def.-Intervenor's Reply at 11. This may be true. But the question is not whether Wyoming has more links with the present case than the District of Columbia. The question is if a *sufficient* nexus connects the District of Columbia with the facts of this case. *Cf. Greater Yellowstone*, 180 F. Supp. at 129 (finding that deference to the plaintiffs' chosen forum is unwarranted when they did not reside in and decision making did not occur in the District of Columbia). Even if an alternate venue has more connections with the dispute, deference to plaintiffs' choice is warranted if the District of Columbia's nexus to the dispute is not insubstantial. *See Wilderness Soc'y*, 104 F. Supp. 2d at 17 ("While the bulk of . . . analysis supporting [Department of Interior's] decision was conducted in Alaska and almost all of DOI's employees who worked on the project are located in Alaska, the connection of this suit to the District of Columbia is not insubstantial."). Robbins concedes that Washington-based BLM officials helped negotiate the settlement but characterizes their participation as mere oversight

and coordination. *See* Def.-Intervenor's Reply at 10. He does not suggest that such oversight by BLM's Washington officials was insignificant, unimportant or mere rubber-stamping. As a result, the court finds the nexus between this case and the District of Columbia sufficient to justify deference to plaintiffs' choice of forum.

      *ii. Defendant-Intervenor's Choice of Forum*

Robbins has legitimate reasons for preferring the Wyoming as a forum: He lives in Wyoming and has several pending cases in the District of Wyoming apparently related to the present action. Further, many negotiations over the settlement did occur in Wyoming. Finally, decisions rendered in this case will impact the land and Robbins' lifestock in Wyoming directly. Despite these bona fide connections between this case and Wyoming, plaintiffs' choice of forum deserves deference and, therefore, prevails. *See Greater Yellowstone*, 180 F. Supp. 2d at 126 (finding that deference to plaintiffs's choice of forum prevailed over defendants' choice of forum, even though most defendants, and the land and permits at issue were all in Montana).

      *iii. Where the Claim Arose*

Robbins argues that all actions relevant to this case took place in Wyoming, and that all actions that occurred outside Wyoming were nominal. Robbins's land, at issue in the settlement agreement, is located in Wyoming. However, the court already found, for a number of reasons and based on a number of exhibits, that the participation by officials at BLM headquarters in Washington, D.C. was not nominal. That the land at issue is located in Wyoming matters not, for courts in this district have denied transfer even when land at issue was located outside the District. *See Greater Yellowstone*, 180 F. Supp. 2d at 126.

The current record indicates that the claim arose in both Wyoming and the District of Columbia. Plaintiffs' complaint requests relief by asking the court to compel the BLM to stop Robbins from grazing his livestock on federal lands in Wyoming. On the other hand, plaintiffs allege that Robbins negotiated a settlement with Washington, D.C.-based BLM officials, in order to prevent local BLM officials in Wyoming from enforcing federal laws. *See* Compl. ¶¶ 41-47. Even if Robbins is correct that, on balance, more of the claim arose in Wyoming, plaintiffs challenge actions taken by the BLM in Washington, D.C. and argue that, but for the intervention of BLM headquarters, BLM's local office would have properly enforced federal grazing laws against Robbins. Because this dispute arose in both Wyoming and the District of Columbia, this factor favors neither forum.

   *iv. Convenience of the Parties*

Robbins's assertion that the District of Columbia is an inconvenient forum for the parties is poorly supported. First, the District of Columbia is convenient for plaintiffs. By bringing suit in the present forum, they presumably do not consider it inconvenient. *See Wilderness Soc'y*, 104 F. Supp. 2d at 15. Further, ALA is headquartered in the District. In addition, defendants BLM, Clarke, and Cherry indicate no preference for the District of Columbia or Wyoming. Defs.' Response to Mot. to Transfer at 1. Finally, while no one doubts that Wyoming is more convenient for Robbins, he displays some *chutzpah*[11] in suggesting that to defend an action in the District of Columbia, that faraway land, would be inconvenient when he previously has brought actions in this district against the Interior Department. *See Robbins v. Dep't of Interior*, Civ. No. 01-1519 (D.D.C., filed July 12, 2001). Accordingly, this factor militates against transfer.

---

[11] *See generally* Alex Kozinski & Eugene Volokh, Essay, *Lawsuit Shmawsuit*, 103 YALE L.J. 463 (1993) (defining chutzpah and other terms of "legal Yiddish").

*v. Convenience of the Witnesses*

Since a decision on the merits of this case will involve a review of the administrative record, the convenience of witnesses is unlikely to be relevant. *See Airport Working Group of Orange County v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 231 (citing *Trout Unlimited*, 944 F. Supp. at 18). As a result, this factor favors neither forum.

*vi. Ease of Access to Sources of Proof*

The parties disagree over the size and location of the administrative record. Robbins claims most of the record is in Wyoming, and that to ship these materials would be burdensome. Plaintiffs contend that most of the record is in Washington, D.C. and that whichever court hears this case, copies of the record must be sent to defendants in the District of Columbia. Neither party supplied evidence on the whereabouts or size of the record. Clearly, at least some materials are in Wyoming and some are in the District of Columbia. These vagaries favors neither venue.

**2. Public Interest Considerations**

In determining which venue is favorable to the interest of justice, courts focus on several public interest considerations, including: (1) the transferee district's familiarity with the governing law; (2) the relative congestion of both the transferor and transferee courts; and (3) the local interest in deciding local controversies at home. *Wilderness Soc'y*, 104 F. Supp. 2d at 12.

*i. Transferee Court's Familiarity With Governing Law*

Plaintiffs and Robbins agree that currently, the claims in this suit are all federal and involve no issues of state law. As such, a federal court in Wyoming is not necessarily better suited to decide this action. *See Wilderness Soc'y*, 104 F. Supp. 2d at 16. While Robbins claims

that he may bring cross- or counter-claims based on Wyoming contract law, this is of no concern because an intervenor may not enlarge the issues already before the court. *Seminole Nation of Okla. v. Norton*, 206 F.R.D. 1, 7 (D.D.C. 2001) (citing *Illinois Bell Tel. Co. v. FCC*, 911 F.2d 776, 786 (D.C. Cir. 1990)). Robbins also claims that District of Wyoming courts are already familiar with the facts in this dispute because three related cases are pending before those courts. *See* Def.-Intervenor's Exs. 25, 27-28 (dockets for three civil cases involving Robbins in the District of Wyoming). However, the pendency of a related case in another forum is rarely decisive by itself. *See* Def.-Intervenor's Reply at 12 (citing *Smiths Indus. Med. Sys., Inc. v. Ballard Med. Prods., Inc.*, 728 F. Supp 6, 7 (D.D.C. 1989) (transferring case sua sponte to another forum considering a related case where "evidence overwhelmingly point[ed]" to another forum as more convenient); *S. Cal. Ass'n of Gov'ts v. Kleppe*, 413 F. Supp 563, 564 (D.D.C. 1976) (transferring case to the Central District of California, which had already decided issues raised a second time by plaintiff in the District of Columbia)). Because a District of Wyoming court would be no more familiar with the governing law, this factor does not favor transfer.

      *ii.. Relative Congestion of the Courts*

Neither party suggests that congestion in either district court will lead to undue delay. Therefore, this factor is entitled to no weight and favors neither forum.

      *iii. Local Interest in Deciding Local Controversies*

The third and final public interest factor the court must weigh is the "local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). The question is whether the present action is a local controversy. Robbins argues that it is, while plaintiffs contend the case is national in character. The court agrees with plaintiffs.

Robbins insist that this case is local in nature because it most directly affects his land and livestock in Wyoming. *See Airport Working Group*, 226 F. Supp 2d. at 231 (finding a dispute local where disposition of the case would have "a profound effect on the local environment and the use of local resources"). Further, Robbins cites many local newspaper articles as evidence of local interest in his dispute with the Worland BLM office. *See generally* Def.-Intervenor's Ex. 31. The local interest in this case is clear and significant. *See Trout Unlimited*, 944 F. Supp. at 20 n.22 (citing local newspapers as evidence of local importance of a case).

However, plaintiffs properly characterize the dispute as national in scope. First, even the articles Robbins cites describe the present case as a local dispute turned national, in which Interior Department officials in Washington, D.C. imposed a settlement against the will of local BLM officials.[12] Courts in this district have found that a dispute is national if the plaintiffs challenge the decisions of top federal agency officials in Washington, D.C.[13] Furthermore, while the dispute directly affects Robbins' land and livestock, plaintiffs provide evidence that the issues involved in the present case have national implications, namely that the settlement agreement will encourage other Western ranchers to try to circumvent local BLM officials and

---

[12] *See* Def.-Intervenor's Ex. 31 at 12 (Brodie Farquhar, *Top Interior officials impose settlement*, CASPER STAR-TRIBUNE, June 22, 2003, at A1); *id*. at 16 (Sarah L. Roen, *Interior resolves WY grazing dispute*, W. Livestock J., July 7, 2003, at 1); *id*. at 20 (Brodie Farquhar, *Robbins deal under Interior microscope*, CASPER STAR-TRIBUNE, Sept. 1, 2003, at A1).

[13] *See Wilderness Soc'y*, 104 F. Supp. 2d at 17 (finding a dispute national where Interior Department officials in Washington, D.C. made key decisions, and distinguishing cases where decisions of local federal officials were challenged); *cf. Airport Working Group,* 226 F. Supp. 2d at 230 n.1 (finding dispute local where there was "no evidence that officials based in Washington" played a significant role in decisions challenged by the plaintiffs); *Trout Unlimited*, 944 F. Supp. at 19 (characterizing dispute as local where the plaintiffs challenged "a decision made by a Forest Service official located in Colorado").

deal directly with Interior Department officials in Washington, D.C.[14]  Such issues are of national, not merely local, interest.  *See Wilderness Society*, 104 F. Supp. 2d at 17 (characterizing as national a challenge to Interior Department decisions regarding development of oil and gas in Alaska, in a National Petroleum Reserve planning area, because issues involved national concerns about natural resources).  Finally, other facts, such as the involvement of federal lands[15] and the involvement of national organizations,[16] suggest a dispute of national importance.  In sum, these factors favor retaining the present case in the District of Columbia.

---

[14] *See* Pls.' Opp'n at 18 (citing Brodie Farquhar, *Top Interior officials impose settlement*, CASPER STAR-TRIBUNE, June 22, 2003, at A1); Farquhar at A1 (quoting a Washington, D.C.-based group as saying Robbins's agreement "'undermines sane range management throughout the west" because "[o]nce it is known these kinds of deals can be gotten, there's going to be a long line at the door to get them"); *id*. at A4 (quoting a Natural Resources Defense Counsel official as saying Robbins's agreement is "a threat to the Taylor Grazing Act, but to the very idea that public lands should be managed for the benefit of the public").

[15] The present dispute involves federal lands in Wyoming.  *See Wilderness Soc'y*, 104 F. Supp. 2d at 17 (finding a case national where lands involved were federal and distinguishing as local cases involving state-controlled lands).

[16] *See Wilderness Soc'y*, 104 F. Supp. 2d at 17 (distinguishing *Trout Unlimited* as a "regional controversy involving no national environmental organizations").  Plaintiff ALA is based in Washington, D.C., and plaintiff WWP has offices throughout the west.

## III. CONCLUSION

Robbins has legitimate reasons to request a discretionary transfer. However, none of the private or public interest factors he raises, individually or collectively, suffices to overcome the deference due plaintiffs' choice of forum.

Consequently, it is this 28th day of July, 2004, hereby

**ORDERED** that defendant-intervenor's motion to transfer this action to the District of Wyoming is **DENIED.**

>	Henry H. Kennedy, Jr.
>	United States District Judge